UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

TRUSTEES OF THE PLUMBERS LOCAL UNION
NO. 1 WELFARE FUND, ADDITIONAL SECURITY
BENEFIT FUND, VACATION & HOLIDAY FUND,
PROMOTION FUND, TRADE EDUCATION FUND
AND 401(K) SAVINGS PLAN, TRUSTEES OF THE
PLUMBERS & PIPEFITTERS NATIONAL PENSION
FUND, and TRUSTEES OF THE INTERNATIONAL
TRAINING FUND and GEORGE W. REILLY, as
Business Manager of LOCAL UNION NO. 1 OF THE
UNITED ASSOCIATION OF JOURNEYMEN AND
APPRENTICES OF THE PLUMBING AND
PIPEFITTING INDUSTRY OF THE UNITED
STATES AND CANADA,

REPORT AND
RECOMMENDATION
CV-08-116 (FB) (JMA)

                                  Plaintiffs,

              -against-

AXIOM PLUMBING & HEATING CORP.,

                               Defendant.

-------------------------------------------------------------------X

A P P E A R A N C E S :

Charles R. Virgina, Esq.
Barnes, Iaccarino, Virginia, Ambinder
& Shepherd, PLLC
111 Broadway
14th Floor, Suite 1403
New York , NY 10006
        *Attorney for Plaintiffs*

**AZRACK**, **United States Magistrate Judge:**

      By Order dated January 30, 2009, the above-captioned action was referred to me by the

Honorable Frederic Block for a report and recommendation on plaintiffs' application for

damages, attorneys' fees and costs against defendant Axiom Plumbing & Heating Corporation

("Axiom" or "defendant").  For the reasons stated below, I respectfully recommend that a

judgment of $140,479.64 in damages, $35,448.75 in interest, $3,434.64 in attorneys' fees, and

$455.00 in costs be entered against defendant, for a total damages award of $179,818.03.

## I. BACKGROUND

This action is brought pursuant to §§ 502 and 515 of the Employee Retirement Income

Security Act of 1974, as amended, 29 U.S.C. §§ 1132 and 1145 ("ERISA"), and § 301 of the

Labor-Management Relations Act of 1947, 29 U.S.C. § 185 ("Taft-Hartley Act"). Plaintiffs are

trustees of the Plumbers Local Union No. 1 Welfare Fund, Additional Security Benefit Fund,

Vacation & Holiday Fund, Promotion Fund, Trade Education Fund and 401(k) Savings Plan (the

"Funds"); the business manager of Local Union No. 1 of the United Association of Journeymen

and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the

"Union"); trustees of the Plumbers & Pipefitters National Pension Fund (the "NPF"); and

trustees of the International Training Fund (the "ITF"). Plaintiffs bring suit in their capacity as

fiduciaries or third-party beneficiaries of various employee benefit plans.

On or about September 20, 1983, Axiom became a member of the Association of

Contract Plumbers of the City of New York, Inc. (the "ACP"), and, pursuant to the terms of a

Collective Bargaining Agreement ("CBA") between the ACP and the Union, became obligated

to make contributions to the Funds according to rate schedules set forth in the CBA for certain

employees covered by the agreement. (Decl. of Charles R. Virginia ("Virginia Decl.") ¶¶ 5-8.)

Plaintiffs allege that from January 1, 2004 through December 31, 2007, Axiom failed to properly

remit payments to the Funds discussed above and refused to cooperate with a payroll audit. (Id.

¶ 15; Comp. ¶¶ 20-25; see also Virginia Decl., Ex. C.) Defendant failed to appear in the action;

thus, a default judgment was entered against Axiom in Judge Block's January 30, 2009 Order.

## II. DISCUSSION

### A. Proof of Damages

Defendant's default amounts to an admission of liability. Thus, all of the well-pleaded allegations in plaintiff's complaint pertaining to liability are deemed true; however, plaintiff must prove damages before the entry of a final default judgment. See Credit Lyonnais Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). The district court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that when granting a default judgment, if "it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence . . . the court may conduct such hearings or order such references as it deems necessary and proper . . . ." The Second Circuit has held that, under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111 (quoting Fustok v. ContiCommodity Serv. Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

In this case, plaintiffs' counsel submitted: i) the Declaration of Charles A. Virginia; ii) a copy of Axiom's application, acceptance and announcement letters; iii) a copy of the CBA between the Union and Axiom; iv) a copy of a payroll audit report for the period January 1, 2004 through December 31, 2007; and iv) documentation of attorneys' fees and costs. I consider these submissions sufficient evidence to form the basis for an award of damages.

B.  ERISA Relief

ERISA allows plan fiduciaries to bring civil actions to enforce the provisions of the plan and obtain equitable relief.  29 U.S.C. § 1132(a)(3)(B)(ii); <u>see also</u> 29 U.S.C. § 1132(d)(1).  Section 1145 makes clear that a plan member's contractual duty to make contributions to multiple employer plans "becomes a statutory requirement, and the duty may be enforced in accordance with 29 U.S.C. § 1132(g)."  <u>Gilles v. Burton Constr. Co.</u>, 736 F.2d 1142, 1143 n.2 (7th Cir. 1984).[1]  With respect to actions by fiduciaries, ERISA also allows for the recoupment of attorney's fees and costs stemming from delinquent contributions.  Section 1132(g)(2) provides that in such actions the district court must award a fund the following:

(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of—
    (i)       interest on the unpaid contributions, or
    (ii)     liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

Because this action was brought on behalf of the plans, § 1132(g)(2) controls, and I will apply

---

[1] Section 1145 requires

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. 1145.

According to the Second Circuit, Congress adopted § 1145 so that plans could rely on their agreements and "recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law . . . ."  <u>Benson v. Brower's Moving & Storage, Inc.</u>, 907 F.2d 310, 314 (2d Cir. 1990) (internal quotation marks and citations omitted).  "Simply put, benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations."  <u>Id.</u>

each of the statute's remedial provisions in turn.

1. Unpaid Contributions

By its default, Axiom has admitted that it failed to properly remit contributions on behalf of employees covered by the CBA in the total amount of $119,003.75. Plaintiffs provided uncontested audit reports of the unpaid amounts. (See Virginia Decl., Ex. C.) For the period January 1, 2004 through December 31, 2007, Axiom failed to make payments to the Union in the amount of $5,990.87. In addition, Axiom owes the following contributions, to the following funds, for the same time period: (1) $89,062.60 to the Local 1 Funds; (2) $23,247.63 to the NPF; and (3) $702.65 to the ITF. (See Virginia Decl. ¶¶ 15, 21.) Accordingly, I respectfully recommend that the Court award plaintiffs unpaid contributions in the amount of $119,003.75.

2. Interest on the Unpaid Contributions

ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). Under the terms of the CBA, Axiom is liable: (1) to the Union for interest on the amount of unpaid contributions at an annual rate of ten percent, resulting in a total interest amount of $1,546.60; (2) to the Local 1 Funds at an annual rate of ten percent, resulting in a total interest amount of $25,498.00; (3) to the NPF at an annual rate of twelve percent, resulting in a total interest amount of $7,983.80; and (4) to the ITF at an annual rate of twelve percent, resulting in a total interest amount of $420.35. (See Virginia Decl. ¶¶ 19, 22, 24, 27.) Accordingly, I respectfully recommend that the Court award plaintiffs interest in the total amount of $35,448.75.

3. Liquidated Damages

In addition to interest on the delinquent contributions, section 1132(g)(2) awards the greater of the interest due or liquidated damages provided for under the plan in an amount not to exceed twenty percent of the unpaid contributions. Under the CBA, Axiom is liable: (1) to the Union for liquidated damages of twenty percent of the unpaid contributions resulting in liquidated damages of $1,198.17; (2) to the Local 1 Funds for liquidated damages of twenty percent of the unpaid contributions, resulting in liquidated damages of $17,812.52; (3) to the NPF for liquidated damages of ten percent of the unpaid contributions, resulting in liquidated damages of $2,324.76; and (4) to the ITF for liquidated damages of twenty percent of the unpaid contributions, resulting in liquidated damages of $140.53. (See Virginia Decl. ¶¶ 18, 20, 21, 23, 26, 28.) Accordingly, I respectfully recommend that the Court award plaintiffs liquidated damages in the total amount of $21,475.89.[2]

4. Attorneys' Fees and Costs

    a. Fees

"[T]he determination of a reasonable fee award under Section 1132(g)(2)(D) of ERISA lies within the sound discretion of the district judge." Bourgal v. Lakewood Haulage, Inc., 827 F.Supp. 126, 129 (E.D.N.Y. 1993) (citations omitted). A party seeking such an award must support its application by submitting contemporaneous time records that detail "for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). The Second Circuit

---

[2] Although the proposed judgment submitted by plaintiffs seeks liquidated damages in the amount of $20,277.81, the Court's calculations result in a greater liquidated damages total of $21,475.89. It appears that this discrepancy results from plaintiffs' omission of $1,198.15 in liquidated damages owing to the Union per the CBA's contemplation of liquidated damages at a rate of twenty percent of the $5,990.87 in unpaid contributions. (Compare Virginia Decl. ¶ 21 with Plaintiffs' Proposed Default J. at 2.)

utilizes a "presumptively reasonable fee" standard to determine appropriate attorney's fees for federal claims. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182 (2d Cir. 2008). In calculating the "presumptively reasonable fee," the district court should look to what a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" would be willing to pay. Id. at 184, 190.

In this case, plaintiffs' counsel submitted a declaration and contemporaneous time records in support of plaintiffs' application for attorneys' fees. (See Virginia Decl. ¶ 30; id., Ex. D.) Over a period of approximately one year, a team of three associate attorneys and four paralegals expended a total of 25.05 hours on this case and billed at hourly rates ranging from $75.00 for paralegals to $200.00 for associates. (Virginia Decl. ¶ 30.) I have reviewed the billing records and find that both the hours expended on this case and the hourly billing rates are reasonable; therefore, I respectfully recommend that the Court award plaintiffs $3,434.64 in attorneys' fees.

### b. Filing Fee and Service Costs

ERISA allows for the recoupment of costs. 29 U.S.C. § 1132(g)(2)(D). Plaintiffs have provided documentation that the costs of this action total $455.00. (See Virginia Decl. ¶ 30.) This amount includes a $350 filing fee and service costs of $105.00. I find these expenses reasonable and I respectfully recommend that the Court award plaintiffs costs in the amount of $455.00.

### c. Audit Costs

In addition to the costs outlined above, plaintiffs also seek audit costs in the amount of $15,372.50. (See Proposed Default J. at 2.) ERISA allows for the recoupment of such costs.

See 29 U.S.C. 1132(g)(2)(E).  However, plaintiffs' initial submissions failed to include any evidence in support of the request for audit fees.  Therefore, plaintiffs were directed to provide the Court with appropriate substantiation of the audit fees incurred in this case.  (See ECF Order dated April 13, 2009.)  In response, plaintiffs submitted a supplemental Declaration of lead counsel Charles R. Virginia ("Virginia Supplemental Decl."); the Declaration of Mark Del Orfano ("Del Orfano Decl."), the supervising auditor in this case; copies of defendant's union paperwork; the relevant CBA; a revised payroll audit report; and a copy of "[the Fund's] Policy for Collection of Delinquent Fringe Benefit Employer Contributions."  (See Dkt. No. 13.)  However, these submissions also fail to provide the Court with an adequate basis to recommend an award of audit costs.

In his Declaration, Mr. Del Orfano states that he is a Certified Public Accountant employed by Marshall & Moss Payroll Compliance Services, LLC, which provided plaintiffs with auditing services in this case.  (Del Orfano Decl. ¶¶ 2-3.)  Mr. Del Orfano reports that the Axiom audit began on March 5, 2008, was "restarted" in June 2008 due to discrepancies in the various records, and was completed in October 2008.  (Id. ¶¶ 4-6.)  Mr. Del Orfano further states that his services were billed at an hourly rate of $100.00 and other auditors billed at an hourly rate of $80.00.  (Id. ¶ 7.)  Finally, Mr. Del Orfano states that 212.25 hours were expended by the auditors in this case, resulting in total audit fees of $17,817.50.  (Id.)  Next, counsel's Supplemental Declaration outlines the procedural history of this case, (see Virginia Supp. Decl. ¶ 2), explains the contractual relationship between the parties, (see id. ¶¶ 2-3), and notes that the terms of the CBA obligate defendant to pay the costs of the audit because it failed to remit fringe benefits in an amount exceeding $50,000.00.  (See id.  ¶¶ 7-14.)  However, counsel provides no

documentary support or other substantiation for plaintiffs' audit fee request other than summarily stating that "Axiom is liable for the cost of the audit." (Id. ¶ 16.)

Requests for audit costs are "generally determined by utilizing the same standards the court applies in awarding attorneys' fees." King v. Unique Rigging Corp., CV-01-3797, 2006 WL 3335011, at *5 (E.D.N.Y. Oct. 27, 2006) (citation omitted). "Accordingly, the evidence supporting an audit fee request under 29 U.S.C. § 1132(g)(2)(E) must include, at minimum, some breakdown of the auditors' rates charged and hours expended." Masino v. Tucci Equip. Rental, CV-08-898, 2008 WL 5451005, at *2 (E.D.N.Y. Nov. 20, 2008).

In this case, the two pages of time records submitted by plaintiffs in support are devoid of any meaningful explanation specifying what work was performed. (See Del Orfano Decl., Ex. A.) Specifically, most entries in the billings records are simply denoted "Axiom Plumbing" or "Axiom" and do not explain or outline what specific tasks were undertaken in this case. (See, e.g., id. Ex. A., entries for March 2008.) Because these submissions fail to provide the Court with information necessary to assess the reasonableness of plaintiffs' request, I cannot recommend that plaintiffs' request for audit costs be granted.[3]

---

[3] The Court notes that this is not the first occasion on which plaintiffs' counsel has submitted an audit cost request that falls short of the evidentiary support necessary to permit an award of such costs. See, e.g., Masino, 2008 WL 5451005, at *2 (recommending that audit costs be denied where plaintiffs "twice failed to provide" substantiation of audit costs); Trustees of the Plumbers Locak Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund and 401(k) Sav. Plan v. Philip Gen. Constr., CV-05-1665, 2007 WL 3124612, at *14) (E.D.N.Y. Oct. 23, 2007) (request for audit fees rejected where "plaintiffs offer[ed] no evidence that [the amount requested was] a reasonable fee for [audit services]"); Cruz v. US Health Clean, CV-07-6392, 2009 WL 1562749, at *7 (S.D.N.Y. May 29, 2009) (request for audit fees rejected where the Court "cannot assess the reasonableness of [the] fee when a dearth of necessary information exists") (citation omitted).

5. Injunctive Relief

Although the complaint in this case seeks "an injunction permanently enjoining Defendant Axiom . . . from failing, refusing or neglecting to pay and/or submit the required contributions and/or reports to plaintiffs funds . . . ," (Compl. at 17), this relief is not requested either in counsel's declaration in support of plaintiffs' application, nor in the proposed default judgment submitted to the Court. Nevertheless, an injunction on a motion for default judgment is appropriate when the moving party shows that "(1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." La Barbera v. Les Sub-Surface Plumbing, Inc., CV-06-3343, 2008 WL 906695, at *10 (E.D.N.Y. Apr. 3, 2008) (citation omitted).

ERISA provides that fiduciaries may commence an action: "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3). Section 1132(g)(2)(E) authorizes courts to grant "such other legal or equitable relief as the court deems appropriate" in an ERISA case. 29 U.S.C. § 1132(g)(2)(E). Therefore, plaintiffs have demonstrated that they are statutorily entitled to injunctive relief.

However, plaintiffs must also establish that they meet the prerequisites for an injunction; irreparable harm and the absence of an adequate remedy at law. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982). In the complaint, plaintiffs allege that they "have no adequate remedy at law to insure that Defendant Axiom will adhere to the terms of the [CBA]" and that they are faced with "immediate and irreparable injury" unless the Court grants the requested equitable

relief. (Compl. ¶¶ 59-60.) Other than these allegations in the complaint, plaintiffs' submissions do not offer any support for their request for injunctive relief. Specifically, there is no evidence in the record to suggest that monetary damages are inadequate to remedy any future violations.

Plaintiffs have, therefore, failed to satisfy their burden of establishing irreparable harm or the absence of an adequate remedy at law. See, e.g., Les Sub-Surface, 2008 WL 906695, at *10 (monetary damages adequate remedy for future ERISA violations); LaBarbera v. Interstate Development Group, CV-07-2052, 2008 WL 858985, at *9 (E.D.N.Y. Mar. 31, 2008) (same). Accordingly, I respectfully recommend that plaintiffs' request for injunctive relief be denied.

## III. CONCLUSION

For the forgoing reasons, I respectfully recommend that a judgment of $140,479.64 in damages, $35,448.75 in interest, $3,434.64 in attorneys' fees, and $455.00 in costs be entered against defendant, for a total damages award of $179,818.03. I further recommend that plaintiffs' application for a permanent injunction be denied.

Plaintiffs are directed to serve a copy of this report and recommendation on defendant and to promptly file proof of service by ECF. Any objections to this report and recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1) (2000); Fed. R. Civ. P. 72, 6(a), 6(e).

SO ORDERED.

Dated: June 30, 2009
      Brooklyn, New York

                                       /s/
                                       JOAN M. AZRACK
                                       UNITED STATES MAGISTRATE JUDGE